**United States District Court**
**District of Massachusetts**

```
_____
                                )
KATHLEEN M. CRAFT and ROBIN R.  )
CRAFT,                          )
         Plaintiffs,            )
                                )    Civil Action No.
         v.                     )    08-10975-NMG
                                )
REGIONS MORTGAGE, INC.,         )
CITIGROUP GLOBAL MARKETS REALTY )
CORP., CITIFINANCIAL INC. and   )
CITIGROUP INC.,                 )
         Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Pro se plaintiffs Kathleen M. Craft ("Kathleen") and Robin
R. Craft ("Robin") (collectively, "the Crafts") brought suit
against defendants Regions Mortgage, Inc. ("Regions") and
Citigroup Global Markets Realty Corp. ("Citigroup Global") for 1)
negligent misrepresentation, 2) fraud, 3) breach of contract and
4) libel and, against Regions, Citigroup Global, CitiFinancial
Inc. ("CitiFinancial") and Citigroup Inc. ("Citigroup"), for 1)
violation of Massachusetts lending laws, M.G.L. c. 183 and 183C,
2) negligence and 3) violation of the Massachusetts Consumer
Protection Act, M.G.L. c. 93A.  Before the Court are defendants'
motion for summary judgment and plaintiffs' motion to compel
certain discovery.

-1-

I.   **Background**

   A.   **Factual Background**

   This dispute arises out of the assignment and sale of plaintiff's home loan and the parties' subsequent dealings related to that loan.  On December 21, 2005, Kathleen executed a note for $368,600 payable to the order of Accredited Home Lenders, Inc. ("Accredited").  That note was secured by a mortgage on plaintiffs' home at 2 Manila Avenue in Amesbury, Massachusetts.

   The next relevant factual allegations relate to occurrences in March, 2007.  On March 16, 2007, Accredited sold (and assigned) Kathleen's loan to defendant Citigroup Global as part of a pool of mortgage loans.  On March 29, 2007, apparently unaware that her loan had just been assigned, Kathleen filed suit against Accredited and two other entities in Massachusetts state court ("the Accredited suit").  Her claims were similar to those alleged here, i.e. Accredited was charged with predatory and deceptive practices as well as inflating the value of the Crafts' home.

   Plaintiffs contend that they first learned that Accredited had sold and assigned Kathleen's loan in July, 2007.  On July 31, 2007, Regions allegedly sent a letter to plaintiffs notifying them of the loan transfer and of the fact that Regions would, from that time forward, be servicing the loan.  Shortly

thereafter, Robin contacted Regions to notify them of the pending litigation against Accredited regarding the loan.

Plaintiffs allege that, for the succeeding six months, defendants misled them about their plans with respect to the Accredited suit and Kathleen's loan.  First, plaintiffs claim that in August and again December, 2007, Regions told them that the loan would be re-assigned to or repurchased by Accredited. That did not happen and the loan remained with the defendants. Then, the Crafts maintain, Regions offered to adjust the loan agreement beginning in January, 2008 to make it affordable and to add Robin as an obligor.  Although the defendants apparently proposed revised terms, plaintiffs rejected them as still unaffordable.  Finally, with respect to the Accredited suit, plaintiffs allege that the defendants repeatedly told them that 1) the Accredited suit did not affect the mortgage contract because Accredited no longer owned it, 2) only Citigroup Global could modify it and 3) any settlement with Accredited would not apply to Regions or Citigroup Global.

Dissatisfied with the defendants' conduct and in anticipation of filing a consumer protection claim, Kathleen sent a demand letter to Regions on March 8, 2008 outlining her complaints.  That letter noted that the Accredited suit was still pending.  About one month later, however, on April 7, 2008, Kathleen and Accredited entered into a Release and Settlement

Agreement ("the Accredited Settlement").  Accredited agreed to
pay Kathleen $65,000, $50,280.86 of which reimbursed her for past
payments to Accredited and $14,719.14 of which settled "all
disputed claims".  Although the agreement explicitly states that
Accredited no longer owned Kathleen's loan, it also contains the
following release:

> [Kathleen] hereby releases, remises and discharges
> [Accredited], and [its] ... successors ... and assigns
> ... from any and all claims, demands, actions, suits,
> causes of action, and liabilities of every nature,
> arising heretofore or hereafter, which are known or which
> are unknown or unknowable, including, but not limited to,
> any and all claims that were raised or could have been
> raised in the [Accredited suit] and any and all claims
> ... arising out of or relating in any way to the loan
> from [Accredited] to [Kathleen].

## B.   Procedural History

On April 16, 2008, just nine days after executing the
settlement agreement with Accredited, Kathleen and Robin filed a
complaint in Massachusetts Superior Court, making the same
general allegations as outlined in the March 7, 2008, demand
letter.  Defendants removed the case to this Court in June, 2008.
After limited discovery, the defendants moved for summary
judgment in August, 2009.  The plaintiffs filed a timely
opposition and a motion to compel discovery to which the
defendants filed an opposition in September, 2009.

II.  **Analysis**

    A.  **Defendants' Motion for Summary Judgment**

        1.  **Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving

-5-

party and indulge all reasonable inferences in that party's
favor.  O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).
If, after viewing the record in the non-moving party's favor, the
Court determines that no genuine issue of material fact exists
and the moving party is entitled to judgment as a matter of law,
summary judgment is appropriate.

### 2.   Application

Defendants move for summary judgment with respect to all
claims against all defendants.  They contend that 1) Robin has no
standing to bring any claims because she is not a party to the
loan, 2) all claims against Citigroup and CitiFinancial are
improper because they have no interest in the loan and 3)
Kathleen released all claims against the remaining defendants,
who are assignees or successors of Accredited, through the
Accredited Settlement.  Plaintiffs respond generally that
defendants' motion is premature and that discovery remains to be
completed.  They also offer rebuttal of all three arguments of
defendants which are considered here in turn.

### a.   Claims Brought by Robin

Defendants argue, briefly, that Robin is not a real party in
interest with standing to bring claims in this case.  They assert
that 1) she did not execute the subject loan and thus has no
rights under it and 2) the alleged wrongdoing in connection with
Kathleen's credit reports "has nothing to do with Robin['s]

credit".

The Crafts respond that Robin has a substantial interest in this litigation.  They state that Robin was directly involved in all negotiations with the defendants and the attempts to modify the loan agreement as evidenced, for example, by a letter from Regions addressed to her, not Kathleen.  Moreover, plaintiffs maintain that Robin was supposed to be added to the loan contract if it had been modified as promised (which is part of the basis for this suit).  Finally, plaintiffs claim that Robin's credit score has, in fact, been negatively impacted by defendants' wrongdoing because she and Kathleen have joint credit cards.

Plaintiffs have demonstrated that Robin has a sufficient interest in the allegations of this case, notwithstanding the fact that the original loan agreement was not in her name. Accordingly, the defendants' motion with respect to Robin will be denied.

### b.   Claims Against Citigroup and CitiFinancial

Defendants succinctly argue that plaintiffs have not and cannot allege any facts to show that either Citigroup or CitiFinancial is liable.  Neither is a party to the loan which was assigned by Accredited to Citigroup Global and simply being affiliated with Citigroup Global does not expose those entities to liability.

In addition to their general assertion that summary judgment

-7-

is premature because discovery is not yet complete, plaintiffs respond briefly to defendants' argument.  They assert that Citigroup was named as a party because it took bailout money from the government under the premise of modifying bad loans but has not yet shown how those funds were dispersed.

Plaintiffs' response is unpersuasive.  Although their generic claim that this case is not yet ripe for summary judgment is colorable, the Court will, nonetheless, allow summary judgment in favor of Citigroup and CitiFinancial.  They are not made parties to the loan simply by virtue of their affiliation with the assignees.

### c.    The Accredited Settlement

With respect to the Accredited Settlement, defendants' argument is straightforward.  They contend that 1) courts favor enforcing signed releases, 2) Citigroup Global and Regions, acting as Citigroup Global's agent, are "successors" or "assigns" of Accredited, 3) the plain, broad terms of the release cover this dispute and, therefore, 4) the agreement bars these claims. Had Kathleen intended to limit the release such that it unambiguously did not cover this suit, defendants argue, she could have done so.  Indeed, Kathleen had already sent a demand letter to Regions and thus was clearly aware of her claims at the time of settlement.

Plaintiffs respond that the Accredited Settlement, despite

its broad terms, does not cover this case for several reasons.
First, defendants told them that the Accredited suit was separate
from and unrelated to Citigroup Global or Regions because
Accredited no longer owned the loan.  Furthermore, plaintiffs
contend that the release was specifically limited to the
Accredited suit, which the defendants declined to join.
Moreover, the Crafts assert that the defendants knew about and
encouraged the Accredited Settlement while representing that it
had nothing to do with them.  Plaintiffs argue that the
defendants cannot now procure a benefit out of litigation from
which they previously sought to distance themselves.

    This issue presents a close question.  On the one hand, as
the defendants argue, the terms of the Accredited Settlement are
broad enough to encompass this case and plaintiffs, even if they
were acting pro se, would have been well advised to exclude
explicitly from that agreement any claims against Citigroup
Global or Regions.

    On the other hand, the defendants bear the burden of
proving, with respect to their motion, that there is no genuine
issue of material fact as to the applicability of the general
release.  They have not met that burden for several reasons.
First, the subject loan had been assigned and transferred more
than one year before the Accredited Settlement was executed and
the Crafts' claims in this case are generally based upon the

defendants' post-assignment conduct.  Defendants cite no case law in support of the proposition that a third-party to an assignment (Kathleen) and an assignor (Accredited) may agree, long after the assignment takes place, to release an assignee (Citigroup Global) from claims that may arise after the assignment.  At that point, Accredited had no authority over the loan going forward and Kathleen insists that she did not (nor did she intend to) release Citigroup Global.  Indeed, because Accredited cannot be held liable for the defendants' post-assignment conduct, claims regarding such conduct were not logically of any concern to Accredited when it obtained the release.

Furthermore, beyond the defendants' inability to cite any authority for their position, the parties' conduct and the settlement itself arguably weigh against the entry of summary judgment.  The Crafts claim that they were told repeatedly that the Accredited suit and any agreement arising therefrom was unrelated to the defendants and would not bind them.  Moreover, the settlement can be read to apply only to claims related to the Accredited suit or Accredited's conduct with respect to the loan. For example, most of the $65,000 payment reimburses Kathleen for payments she made to Accredited before Citigroup Global was assigned the loan.  Thus, notwithstanding the broad release terms, its object was clearly retrospective.  It was prospective only to the extent that it was to protect Accredited's assignees

against claims based upon Accredited's actions.  Plaintiffs'
claims are arguably outside of that scope.

In light of the parties' countervailing arguments, the Court
will proceed as follows.  It will deny without prejudice
defendants' motion for summary judgment to the extent it is based
upon the Accredited Settlement.  The defendants may renew their
motion, however, with a supporting memorandum, not to exceed five
pages, which addresses the above-described ambiguities and the
concerns of the Court.

### B.   Plaintiffs' Motion to Compel

Plaintiffs move to compel the defendants to provide answers
to interrogatories and production of documents.  They also attack
defendants' counsel as "unethical, combative and [intending] to
bully and intimidate the plaintiffs".

Defendants respond that they were unaware of plaintiffs'
requests until plaintiffs' opposition to summary judgment
referred to outstanding discovery issues.  Defendants immediately
reached out to plaintiffs for a copy of their requests but were
instead met with the instant motion to compel.  In any case,
defendants stated an intent to respond on or before October 12,
2009.

In light of defendants' purported compliance, plaintiffs'
motion will be denied.

**ORDER**

In accordance with the foregoing,

1)     defendants' motion for summary judgment (Docket No. 14) is, with respect to Citigroup and CitiFinancial, **ALLOWED**, with respect to Robin, **DENIED,** and, with respect to the Accredited Settlement, **DENIED** without prejudice; and

2)     plaintiffs' motion to compel (Docket No. 19) is **DENIED.**

If the defendant chooses to renew its motion for summary judgment supported by the Accredited Settlement, it will file such pleadings on or before April 30, 2010.

**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge

Dated March 29, 2010