```
                    United States District Court
                      District of Massachusetts
_____
                              )
KATHLEEN M. CRAFT and ROBIN R. )
CRAFT,                        )
        Plaintiffs,           )
                              )    Civil Action No.
        v.                    )    08-10975-NMG
                              )
REGIONS MORTGAGE, INC.,       )
CITIGROUP GLOBAL MARKETS REALTY )
CORP., CITIFINANCIAL INC. and )
CITIGROUP INC.,               )
        Defendants.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Pro se plaintiffs Kathleen M. Craft ("Kathleen") and Robin R. Craft ("Robin") brought suit against defendants Regions Mortgage, Inc. ("Regions") and Citigroup Global Markets Realty Corp. ("Citigroup Global") for 1) negligent misrepresentation, 2) fraud, 3) breach of contract and 4) libel; and, against Regions, Citigroup Global, CitiFinancial Inc. ("CitiFinancial") and Citigroup Inc. ("Citigroup"), for 1) violation of Massachusetts lending laws, Mass. Gen. Laws ch. 183C, 2) negligence and 3) violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A. Before the Court are cross-motions for summary judgment.

I. **Factual Background**

This dispute arises out of the assignment and sale of

Kathleen's home loan and the parties' subsequent dealings related to that loan.  On December 21, 2005, Kathleen executed a note for $368,600 payable to the order of Accredited Home Lenders, Inc. ("Accredited").  That note was secured by a mortgage on plaintiffs' residence at 2 Manila Avenue in Amesbury, Massachusetts.

On March 16, 2007, Accredited sold (and assigned) Kathleen's loan ("the Accredited Loan") to defendant Citigroup Global as part of a pool of mortgage loans.  Regions was assigned to service the loan on behalf of Citigroup Global.  At the time, Kathleen was in default because of her failure to make monthly payments.  On March 29, 2007, apparently unaware that her loan had just been assigned, Kathleen filed suit against Accredited and two other entities in Massachusetts state court ("the Accredited Suit").  Her claims were similar to those alleged here, i.e. Accredited was charged with predatory and deceptive practices as well as inflating the value of the Crafts' residence.

Plaintiffs contend that they first learned that Accredited had sold and assigned Kathleen's loan in July, 2007.  On July 31, 2007, Regions allegedly sent a letter to the plaintiffs notifying them of the loan transfer and of the fact that Regions would, from that time forward, be servicing the loan.  Shortly thereafter, Robin contacted Regions to notify them of the pending

litigation against Accredited regarding the loan.

Plaintiffs allege that, for the succeeding six months, the defendants misled them about their plans with respect to the Accredited Suit and Kathleen's loan. First, the plaintiffs claim that in August and again in December, 2007, Regions told them that the loan would be re-assigned to, or repurchased by, Accredited. That did not happen and the loan remained with the defendants. Thereafter, the Crafts maintain, Regions offered to adjust the loan agreement to make it more affordable and to add Robin as an obligor. Although the defendants proposed revised terms multiple times, plaintiffs repeatedly rejected them as still unaffordable. Finally, plaintiffs allege that the defendants repeatedly told them that 1) the Accredited Suit did not affect the mortgage contract because Accredited no longer owned it, 2) only Citigroup Global could modify the loan contract and 3) any settlement with Accredited would not apply to Regions or Citigroup Global.

Dissatisfied with the defendants' conduct and in anticipation of filing a consumer protection claim, Kathleen sent a demand letter to Regions on March 8, 2008 outlining her complaints. That letter noted that the Accredited suit was still pending. About one month later, however, on April 7, 2008, Kathleen and Accredited entered into a Release and Settlement Agreement ("the Release and Settlement"). Accredited agreed to

pay Kathleen $65,000, $50,281 of which reimbursed her for past payments to Accredited and $14,719 of which settled "all disputed claims". Although the agreement explicitly states that Accredited no longer owned Kathleen's loan, it also contains the following release ("the Release"):

> [Kathleen] hereby releases, remises and discharges [Accredited], and [its] . . . successors . . . and assigns . . . from any and all claims, demands, actions, suits, causes of action, and liabilities of every nature, arising heretofore or hereafter, which are known or which are unknown or unknowable, including, but not limited to, any and all claims that were raised or could have been raised in the [Accredited suit] and any and all claims . . . arising out of or relating in any way to the loan from [Accredited] to [Kathleen].

**II. <u>Procedural History</u>**

On April 16, 2008, just nine days after executing the settlement agreement with Accredited, Kathleen and Robin filed a complaint against the defendants in the Massachusetts Superior Court Department for Essex County, making the same general allegations as outlined in the March 7, 2008, demand letter. Defendants removed the case to this Court in June, 2008. In August, 2009, after limited discovery, the defendants moved for summary judgment on the basis that the plaintiffs' claims were barred by the Release. The plaintiffs responded with a motion to compel.

On March 29, 2010, the Court issued a Memorandum & Order ("the March, 2010 M&O") which contained a compound ruling with respect to defendants' motion for summary judgment. First, the

-4-

Court allowed the motion with respect to defendants Citigroup and CitiFinancial because they were not parties to the loan and had no demonstrable link to the case or the claims.  Second, the Court denied the motion with respect to Robin because she had a sufficient interest in, and thus standing to pursue, the litigation.  Finally, with respect to the Release, the Court denied the motion without prejudice and allowed the defendants to address the Court's concerns by filing a supplemental memorandum in support of their motion.

On April 29, 2010, in accordance with the March, 2010 M&O, defendants' filed a renewed motion for summary judgment which the plaintiffs oppose.  On June 21, 2010, the plaintiffs filed a cross-motion for summary judgment which the defendants oppose.

### III. **Motions for Summary Judgment**

#### A. **Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

**B.  Effect of the Release**

Upon a thorough examination of the parties' memoranda and exhibits, the Court finds that the Release and Settlement releases the defendants from all claims arising out of their conduct relating to the Accredited Loan that occurred before the Release and Settlement was executed on April 7, 2008. The

Release and Settlement does not, however, release the defendants from claims that the plaintiffs may have arising out of conduct occurring after April 7, 2008.

In reaching this conclusion, the Court adheres to Massachusetts law, which favors the enforcement of releases. <u>Sharon</u> v. <u>City of Newton</u>, 769 N.E. 2d 738, 744 (Mass. 2002). Although the defendants' failure to provide analogous case law is disappointing, it is nevertheless well-established that a party may relinquish its right to sue by agreeing to release another party from liability. <u>See</u> <u>id.</u> The Court is obliged to enforce the Release and Settlement according to its plain and unambiguous terms. <u>See</u> <u>Lisciotti</u> v. <u>Lattanzio</u>, No. 042155, 2006 WL 2848675, at *5 (Mass. Super. Sept. 15, 2006).

With respect to the identity of the parties covered by the Release, there can be no doubt that the defendants are "assigns" of Accredited because Section 2 of the Release and Settlement explicitly states that the Accredited Loan was sold to Citigroup Global on March 16, 2007. Thus, the defendants are among the parties covered by the Release.

The Court also finds that the plaintiff's claims in the instant case are included in the Release. Contrary to the Court's initial impression that the Release could arguably be read to apply to the actions of Accredited only, upon a further review of the record and the recent memoranda filed by the

parties, it rules out that possibility.

The operative part of the Release indicates that it applies to "any and all claims . . . arising out of or relating in any way to the loan from [Accredited] to [Kathleen]." The plaintiffs' claims relate to the modification of the Accredited Loan, the credit reports issued with respect to the status of that loan and to the alleged violation of the Massachusetts lending laws. It is clear, therefore, that the plaintiffs' claims arise out of and are related to the Accredited Loan and, as such, fall within the scope of the Release. Although the language in the Release is all-inclusive, such general releases are enforceable in Massachusetts. See Eck v. Godbout, 831 N.E. 2d 296, 300-301 (Mass. 2005). Moreover, a general release will settle all matters covered by its language, even if the parties did not have in mind every existing claim at the time the release was executed. Id.

Although the Court finds that the plain language of the Release encompasses the plaintiffs' claims, it is aware of the countervailing evidence that 1) the defendants declared that the Release and Settlement would not bind them, 2) the plaintiffs entered into the Release and Settlement pro se and 3) the Release is unusual in that it was entered into almost one year after the assignment of the loan and months after the allegedly wrongful conduct. Despite those concerns, however, the Court concludes

that it is fair to enforce the Release according to its specific terms and for the following four reasons, all related to those terms.

1. In Section 8 of the Release and Settlement, Kathleen acknowledged that she understood the contents of the Release, had been afforded the opportunity to review it with independent counsel and had not relied on any representations made by any person or party being released.

2. It is well-settled that, if a party intends to limit the scope of a release, she should say so explicitly. See Atlas Tack Corp. v. Crosby, 671 N.E. 2d 954, 958 (Mass. App. Ct. 1996). Section 7 of the Release and Settlement demonstrates that Kathleen knew how to exclude a party from the Release despite her pro se status. In that section, she excluded from the Release any claims that she may have had against Daniel Sullivan. It is notable, therefore, that she did not similarly exclude the defendants. Kathleen was clearly contemplating a lawsuit against the current defendants when she negotiated the Release as evidenced by the Chapter 93A demand letter sent one month before she signed the Release and the filing of the complaint in this case about one week after the Release was executed.

The inference compelled is, therefore, that Kathleen chose not to exclude the defendants, for whatever reason including, perhaps, the consideration that she received in connection with

the settlement.

3. Evidence that the defendants were involved in the negotiation of the Release and Settlement, although not parties to it, is found in Section 4. That section requires the "released parties" to issue a request to the credit reporting agencies that the loan be reported as "on time". Given that, at the time, the defendants were the holders of the note and responsible for reporting to the credit agencies, that provision appears to obligate the defendants to take an action on behalf of Kathleen. That, in turn, is some evidence of additional consideration for her release of any claims against the defendants. Those defendants as "assigns" are included within the definition of "released parties".

4. Section 2 states that the Accredited Loan was sold to Citigroup Global on March 16, 2007 and that "[a]s of the date of signing of this release, Accredited no longer owns the mortgage contract." That language indicates that the transfer of the mortgage contract from Accredited to Citigroup Global was, in some way, implicated by and material to the Release and Settlement.

Because the complaint in this case was filed only one week after the Release and Settlement was executed, the Court concludes that all of the plaintiffs' claims arise from the defendants' alleged conduct prior and not subsequent to April 7,

2008. The Release and Settlement, therefore, releases the defendants with respect to all of those claims. For that reason, the Court will allow the defendants' renewed motion for summary judgment.

**ORDER**

In accordance with the foregoing,

1) defendants' renewed motion for summary judgment (Docket No. 24) is **ALLOWED**; and

2) plaintiffs' motion for summary judgment (Docket No. 26) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton<br>
Nathaniel M. Gorton<br>
United States District Judge

Dated January 11, 2011